CASS BANK & TRUST COMPANY, Plaintiff,

v.

Gary A. MESTMAN, et al., Defendants.

Jack MAZUR, Lynn Mazur, Ronald Raben, and Gail Raben, Third Party Plaintiffs/Appellants,

v.

Ted KRAKOVER, Tom Krakover, Individually and As Trustee of The Ted Krakover Living Trust dated February 11, 1985, and David L. Jones, Third Party Defendants/Respondents.

No. 64723.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 13, 1994.

Alan E. Popkin, Mark G. Arnold, Mark G. Zellmer, St. Louis, for appellants.

Joseph F. Devereux, Jr., Paul Simon, Jr., St. Louis, for respondents.

GRIMM, Chief Judge.

Cass Bank brought this action against defendants on a promissory note and guaranty agreements. Some defendants then filed a

third party action. This appeal concerns only the third party action. For ease of reading, we refer to third party plaintiffs as plaintiffs and to third party defendants as defendants.

Plaintiffs sought indemnification from defendants for amounts owed on the bank note. Defendants pled the defenses of fraud and lack of consideration. The trial court granted plaintiffs' motion in limine to exclude certain evidence.

The parties then submitted the matter on basically stipulated evidence. The trial court granted judgment for plaintiffs. Defendants filed a motion for new trial, which the trial court granted. However, the trial court did not specify its reasons. *See* Rule 78.03. Plaintiffs appeal the granting of a new trial; we affirm.

■ Because the trial court did not specify the grounds for the new trial, it is presumed to be erroneous. Rule 84.05(c);[1] *Holt v. Jamieson*, 847 S.W.2d 194, 196 (Mo.App.E.D. 1993). Thus, the burden of supporting the trial court's action is shifted to defendants. *Id.*

■ In supporting the new trial, defendants are confined to the errors specified in their motion for new trial. Of those specified errors, we consider only errors defendants raise in their briefs. *C.M. v. K.M.*, 878 S.W.2d 55, 56 (Mo.App.E.D.1994).

Defendants support the new trial by alleging three points of error at trial. Their first point is dispositive. They allege that the trial court erred in excluding evidence that plaintiffs received a secret development fee.

## I. Background

In 1987, plaintiffs[2] formed a partnership. The partnership planned to purchase certain land, demolish the buildings thereon, construct a retail center, and operate and lease the center.

Later that year, defendants joined the partnership as general partners. The partnership agreement required each partner to pay his or her pro rata share of any additional cash that the partnership might require.

The partnership agreement was amended as of September 8, 1987. The amendment authorized two partners to execute the documents necessary to consummate the loan with Cass Bank. Further, it provided that $200,000 of the loan proceeds could be distributed to the partners on a pro rata basis as a development fee.

In November, 1987, the partnership borrowed 2.7 million dollars from Cass Bank to build the center. Each partner personally guaranteed the loan.

Based on the September 8 agreement, plaintiffs were jointly entitled to $80,000 and defendants were jointly entitled to $40,000 of the $200,000 development fee. Other partners were entitled to the balance.

The Construction Loan Agreement with Cass Bank provided that only $140,000 of the $200,000 development fee could be drawn down immediately. The $60,000 balance could not be drawn until the project was completed. The $140,000 was paid to another entity, Mestman–Reznick Investment Corp. That corporation divided the money among the four original partners, with plaintiffs receiving $70,000. Defendants did not receive any of the $140,000.

In early 1989, it appeared likely that the property would be leased to Walgreens in the near future. However, the partnership was about $120,000 delinquent on its loan to bank.

Some of the partners discussed how the delinquency should be resolved. It was decided that all the partners should put up the necessary money. If any partner did not, that partner forfeited his interest in the partnership. Plaintiffs said they were in no position to put in their share.

1. By Missouri Supreme Court order dated June 1, 1993, effective January 1, 1994, the paragraph concerning failure to specify grounds for granting a new trial was moved. Prior to that time, it was designated Rule 84.05(b); now it is Rule 84.05(c).

2. We acknowledge that other persons were parties to the agreements discussed in this opinion. However, in order to avoid further complicating the facts, we do not mention them because they do not have a significant part in these proceedings.

On July 1, 1989, the parties signed an agreement. This agreement gave plaintiffs until July 31, 1989, to pay their pro rata share of the debt. The agreement also contained the following provisions:

3. [Plaintiffs agree] that those of them who do not make their required payment shall be deemed to have automatically withdrawn as a partner in the Partnership ... with such automatic withdrawal taking affect at the close of the business day on July 31, 1989 without further notice or action....

4. In the event [plaintiffs] fail to make the payment called for in paragraph 3 above and as a consequence thereof the individuals failing to do so has [sic] their partnership interest transferred back and redeemed by the Partnership, then [defendants] and those other partners who do pay, if any, hereby jointly and severally release the individuals failing to make the payment from, and hold them harmless against, any liability, obligation, expense or claim said individuals have or may have to Cass Bank or otherwise in connection with the Partnership.

Plaintiffs did not pay their share and forfeited their interests in the partnership as of July 31.

Until November, 1989, defendants thought the Walgreen lease would materialize. However, when the Heritage and Urban Design Commission held a public hearing concerning the Walgreen store, many opponents protested the project. In January, 1990, the Commission turned down the proposal.

As a result of the Commission's decision, the lease did not materialize and the partnership was unable to pay the loan. Cass Bank foreclosed and sued plaintiffs to recover its deficiency. Plaintiffs then filed their third party petition against defendants to enforce the indemnification provision.

As an affirmative defense, defendants pled that plaintiffs induced them to invest in the project. Further, they alleged plaintiffs fraudulently breached a fiduciary duty to disclose that they received secret fees from the partnership. Specifically, defendants contended that in 1987, plaintiffs received part of a development fee in violation of the partnership agreement.

At trial, plaintiffs filed a motion in limine to exclude any evidence of the "payment and distribution of a 'Development Fee.'" The trial court sustained the motion.

The parties then entered into a stipulation. Defendants agreed that "in light of the pleadings, the responses to discovery and the depositions taken in this cause and the Court's ruling on the Motion in Limine ... and the Court's ruling on consideration ... [plaintiffs] would be entitled to a directed verdict against [defendants] were this cause to be tried." The trial court entered judgment for plaintiffs and against defendants.

## II. Motion in Limine

■ On the morning of trial, plaintiffs filed a Motion in Limine. The motion sought "to exclude evidence of any actions taken by Defendants Jack Mazur, Ronald Raben, Gerald Reznik, and Gary Mestman with regard to the payment and distribution of a "Development Fee" in connection with the making of the loan at issue in this case."

In support, the motion stated that the action before the court related to the enforcement of an indemnity agreement and that defendants have pled an affirmative defense because they were wronged by the action concerning the "Development Fee." Plaintiffs' motion concluded by saying that "such evidence is irrelevant and unfairly prejudicial" to plaintiffs.

The trial court sustained the motion in chambers in an off-the-record conference. Thereafter, all motions were briefly discussed on-the-record. In that discussion, one of defendants' counsel said:

If I understand your ruling correctly, it is based not upon the grounds that this evidence would be irrelevant, or prejudicial, but upon the grounds that you have decided as a matter of law that since rescission—because there's been a foreclosure sale, there could never be a rescission that could restore the status quo. ... It's a motion in limine, and I don't believe that it's appropriate for evidence to be excluded on the basis of the motion that's before

you, and on the basis which you have announced as the guide for your decision. The trial judge responded:

I think that the primary reason is the rescission question, yes. That the parties could not be put back into their original position.

 Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory. It is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial.

 However, it should not be employed indiscriminately. It is not a substitute for a summary judgment motion. Nor should it "ordinarily [be] employed to choke off an entire claim or defense." *Lewis v. Buena Vista Mutual Ins. Ass'n,* 183 N.W.2d 198, 201 (Iowa 1971).

Here, defendants' answer pled several affirmative defenses. In one, they alleged that plaintiffs were their attorneys and they induced them to invest in the partnership. Further, they pled that plaintiffs breached their fiduciary duty by failing to disclose that they (plaintiffs) received secret fees from the partnership. Also, they alleged that plaintiffs did not disclose their breach before defendants signed the indemnity agreement. Finally, they alleged that they would not have signed the indemnity agreement had they known of plaintiffs' actions.

In their offer of proof to the trial court, defendants offered, among other things, to prove: (1) the original partnership was created by four men (including plaintiffs) and capitalized with a payment of $1.00 each; (2) an amendment to the partnership agreement dated August 20, 1987, provided that a development fee would be distributed to the partners on a pro rata basis; (3) on November 16, 1987, Cass Bank made a $2.7 million construction loan to the partnership; (4) also on November 16, the construction loan agreement, as well as a deed of trust, was signed by all partners and their wives; (5) on November 17, 1987, one of the partners (not a plaintiff) requested $140,000 of the development fee from Cass Bank, but requested that

it be paid to Mestman–Reznik Investment Corp. instead of to the partnership; (6) the money was paid to that corporation, and one-fourth of it was paid to each of the original four partners; and (7) the payment was concealed from defendants and was recorded on the partnership books as a draw on the partner's capital account instead of income.

Further, they offered to prove: (1) on July 1, 1989, defendants agreed to indemnify plaintiffs from claims of Cass Bank or otherwise; (2) in connection with the July 1 agreement, plaintiffs were providing legal representation to some defendants; (3) defendants were unaware of the disbursement of the $140,000 development fee "and relied on the absence of that fact in agreeing to the indemnification provision"; (4) the value of the partnership property on July 1 was less than the amount of debt; (5) the partnership agreement did not contain any provision regarding the treatment of defaulting partners; (6) defendants-Krakovers have agreed and offered to restore plaintiffs' interest in the partnership as it stood on July 1, 1989 or thereafter, however plaintiffs have declined; and (7) defendants would not have entered into the indemnity agreement had they known about the distribution of the development fees.

The facts surrounding the payment and distribution of the "Development Fee" were relevant to defendants' affirmative defense. The offer of proof reflects that plaintiffs violated the partnership agreement as amended on September 8, 1987. That agreement provided:

Out of the proceeds of the loan from Cass Bank & Trust Company, the Partnership shall distribute $200,000 thereof to the partners on a pro rata basis in accordance with the profit percentages of the partners.

At that time, plaintiffs' profit percentage was 40% and defendants' profit percentage was 20%. Thus, if $140,000 was to be distributed, plaintiffs should receive $56,000 and defendants $28,000. However, at the request of one of the original four partners, $140,000 of the Cass Bank loan was paid to another entity. That entity, in turn, paid $70,000 to plaintiffs. Defendants received nothing.

Further, defendants' offer of proof states that "the development fee was falsely recorded on the books and records of the Partnership as a draw against each partner's capital account rather than [as] income to conceal the payment from the other partners." Defendants claim that they did not learn of the $140,000 distribution until after they executed the July 1, 1989 indemnity agreement. Moreover, they say that had they known of the $140,000 payment and the facts surrounding it, they would not have signed the July 1, 1989 agreement indemnifying plaintiffs.

Plaintiffs' motion in limine alleged that evidence concerning the development fee transaction was "irrelevant." "Evidence is considered relevant if the fact it tends to establish tends in turn to prove or disprove a fact in issue." *Charles F. Curry & Co. v. Hedrick,* 378 S.W.2d 522, 536 (Mo.Div. 2 1964). The facts contained in the offer of proof, if proven, were relevant on defendants' affirmative defenses.

We note that the trial judge indicated that her "primary reason" for sustaining the motion in limine was "the rescission question." From the arguments of the parties, we glean that "the rescission question" evolved from plaintiffs' argument that they could not be restored to the status quo.

Suffice to say that whether the parties can be restored to the status quo is an evidentiary question, not one that can be decided by a motion in limine. Further, we note that "where the impossibility of restoring the status quo results from the fraud of [a wrongdoer], rescission will be granted and justice done between the parties as near as circumstances will permit. The wrongdoer will not be permitted to take advantage of a situation [the wrongdoer's] fraud has produced." *Maupin v. Missouri State Life Ins. Co.,* 214 S.W. 398, 401 (Mo.App.W.D.1919). Accordingly, we find the motion in limine was granted erroneously.

■ Although the trial court erred in sustaining the motion in limine, plaintiffs state that we cannot affirm that court's grant of a new trial. They contend that a ruling on a motion in limine is an evidentiary ruling, which rests in the trial court's sound discre-tion. They argue that Rule 84.05(d) precludes us from affirming "on any discretionary basis such as an evidentiary ruling."

Rule 84.05(d) [3] states:

If the trial court grants a new trial without specifying discretionary grounds, it shall never be presumed that the new trial was granted on any discretionary grounds.

■ Rule 84.05(d) provides that an appellate court shall not presume that a new trial was granted on a discretionary ground. As a result, the "burden of supporting" the award of the new trial shifts from the appellant to the respondent. Rule 84.05(c). However, that burden is met "if the respondent demonstrates that the motion should have been sustained on some ground alleged therein." *Artstein v. Pallo,* 388 S.W.2d 877, 880 (Mo. banc 1965).

■ As stated above, the trial court granted the motion in limine under a mistaken application of the law of rescission. This particular ruling concerns law and not a discretionary decision. There can be no discretion when it comes to the law of a case. *Spalding v. Monat,* 650 S.W.2d 629, 632 (Mo. App.E.D.1981). Accordingly, we may properly review this allegation of error.

Defendants-respondents have sustained their burden and demonstrated that the motion for new trial should have been granted on a ground alleged in the motion. Defendants raised in their motion for new trial the error in sustaining the motion in limine. As set out above, the trial court erred in that regard. It corrected that error by awarding a new trial.

In view of our holding, we need not discuss defendants' other contentions that the agreement was not supported by consideration or that the award of attorney fees was improper.

The trial court's judgment granting a new trial is affirmed.

CRANE, P.J., and CRANDALL, J., concur.

---

**3.** This provision was previously contained in Rule 84.05(c).